```
IN THE UNITED STATES DISTRICT COURT FOR THE
           EASTERN DISTRICT OF OKLAHOMA

WESLEY ALLEN JENNINGS,         )
                               )
           Plaintiff,          )
                               )
v.                             )    Case No. CIV-15-431-RAW-KEW
                               )
NANCY A. BERRYHILL, Acting     )
Commissioner of Social         )
Security Administration,       )
                               )
           Defendant.          )
```

## REPORT AND RECOMMENDATION

Plaintiff Wesley Allen Jennings (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Claimant's application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Claimant was not disabled. For the reasons discussed below, it is the recommendation of the undersigned that the Commissioner's decision be REVERSED and the case REMANDED for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social

Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. §423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See*, 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by substantial evidence; and, second, whether the correct legal

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally,* Williams v. Bowen, 844 F.2d 748, 750-51 (10th Cir. 1988).

standards were applied. Hawkins v. Chater, 113 F.3d 1162, 1164 (10th Cir. 1997)(citation omitted). The term "substantial evidence" has been interpreted by the United States Supreme Court to require "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. Casias v. Secretary of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951); *see also*, Casias, 933 F.2d at 800-01.

**Claimant's Background**

Claimant was born on October 10, 1960 and was 53 years old at the time of the ALJ's decision. Claimant obtained his GED. Claimant has worked in the past as a car wash attendant and industrial cleaner. Claimant alleges an inability to work beginning June 30, 2010 due to limitations resulting from degenerative disc disease and bilateral shoulder degenerative arthritis.

**Procedural History**

On April 20, 2012, Claimant protectively filed for disability insurance benefits under Title II (42 U.S.C. § 401, *et seq.*) of the Social Security Act. Claimant's application was denied initially and upon reconsideration. On March 4, 2014, Administrative Law Judge John Belcher ("ALJ") conducted a hearing by video with Claimant appearing in Muskogee, Oklahoma and the ALJ presiding in Tulsa, Oklahoma. On August 8, 2014, the ALJ issued an unfavorable decision. On September 11, 2015, the Appeals Council denied review of the decision. As a result, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

### Decision of the Administrative Law Judge

The ALJ made his decision at step four of the sequential evaluation. He determined that while Claimant suffered from severe impairments, he retained the RFC to perform his past relevant work.

### Error Alleged for Review

Claimant asserts the ALJ committed error in performing a flawed RFC assessment.

### RFC Evaluation

In his decision, the ALJ determined Claimant suffered from the severe impairments of right shoulder degenerative joint disease and right elbow arthritis. (Tr. 13). The ALJ concluded that Claimant

4

retained the RFC to perform light work.  In so doing, he found Claimant could lift, carry, push, and pull 20 pounds occasionally and ten pounds frequently, was able to stand or walk for six hours in an eight hour workday, and was able to sit for six hours in an eight hour workday.  The ALJ determined Claimant could frequently climb stairs, balance, bend, or stoop, kneel, crouch, and crawl but must avoid climbing ladders, ropes, and scaffolding.  He was found to be limited to occasional reaching above the head bilaterally and was frequently able to reach in other directions bilaterally. (Tr. 15).

After consulting with a vocational expert, the ALJ concluded Claimant could perform his past relevant work as a car wash attendant as normally done as described in the *Dictionary of Occupational Titles* ("DOT") and as an industrial cleaner, as Claimant performed the job but not as normally performed per the DOT. (Tr. 20).  The vocational expert also testified Claimant could perform the representative jobs of fast food worker, cashier II, and office helper, all of which the ALJ concluded existed in sufficient numbers both regionally and nationally. (Tr. 21).  As a result, the ALJ found Claimant was not disabled from June 30, 2010 through the date of the decision.  (Tr. 22).

Claimant asserts that the ALJ's RFC evaluation was deficient

in assessing Claimant's shoulder problems and ability to reach. In January of 2012, Claimant was attended by Dr. Brian Chalkin, complaining of bilateral shoulder pain and right elbow pain. Claimant reported that he had experienced problems with his bilateral shoulders since he was a youngster. He was able to forward flex his bilateral shoulders to 150 degrees and abduct to 150 degrees but had severe pain and wrist drop with abduction and external rotation. Dr. Chalkin opined that these were signs and symptoms of rotator cuff pathology. Claimant's right elbow was very stiff and lacked full terminal extension. His arc of motion was from 30 to 130 degrees with full pronation and full supination. Radiographs indicated advanced degenerative arthritis of the right elbow with bone-on-bone changes of the ulnohumeral and radiocapitellar joint. Bilateral shoulders showed type 2 hooked acromion with no evidence of fractures or dislocation. Dr. Chalkin's impressions were bilateral shoulder pain, possibly degenerative arthritis with rotator cuff pathology and right elbow degenerative joint disease. He injected the bilateral shoulders and directed him to return to determine whether the injections were effective. Dr. Chalkin found that he could not improve Claimant's motion in the right elbow since it was a longstanding arthritic process. (Tr. 353-54).

Claimant underwent an MRI of the left shoulder in February of

2012. The MRI revealed a partial undersurface tear of the supraspinatus tendon, superior labral tear, and edema around the middle glenohumeral ligament. A partial tear of this ligament was not excluded. (Tr. 303).

In March of 2012, Claimant was again attended by Dr. Chalkin. He noted Claimant's bilateral shoulder degenerative joint disease and the MRI results. Claimant reported severe pain in his shoulders such that he had a hard time raising his arms and had very limited function. Dr. Chalkin provided additional injections in Claimant's shoulders. He stated that if Claimant is not better on his next visit, he would require either an arthroscopic debridement of the glenohumeral joint on the left side or should arthroplasty. (Tr. 351).

On June 12, 2012, Claimant underwent a consultative examination by Dr. Ronald Schatzman, complaining of lower back problems, neck problems, arthritis in his right elbow, weak left ankle, right knee pain, left knee pain, bilateral degenerative arthritis in the shoulders, and left wrist pain. (Tr. 358). He reported that the pain in his shoulders began in 2010. Claimant's pain was rated by him at a seven out of ten – down from a ten out of ten. Lifting, bending, and doing work located over his head causes the pain to become worse. Id.

Dr. Schatzman found Claimant to have 90/150 degrees of

7

bilateral should abduction in supination and 90/150 degrees of bilateral should forward elevation. He noted only 45 degrees of right elbow extensions. His lumbar-sacral spine was non-tender with decreased range of motion, noting 20/90 degrees of flexion and 0/25 degrees of extension. Dr. Schatzman found it "hard to tell if he has pain with range of motion or not." (Tr. 360).

On July 18, 2012, Dr. James Metcalf completed an RFC assessment form on Claimant. Dr. Metcalf designated the RFC findings for light work, except he found Claimant could never balance and was limited in reaching in all directions, including overhead. (Tr. 369-70). Dr. Metcalf related Claimant's subjective statements and Dr. Schatzman's findings but concluded that while Claimant was limited by his physical conditions, he could still perform light duty work. (Tr. 374).

While the ALJ cited the medical evidence by date, he failed to include the findings which adversely reflected on Claimant's functional ability to reach overhead and in all directions. Indeed, when he did cite the restrictions in Claimant's shoulder range of motion, such as Dr. Schatzman's evaluation, he did not include such restrictions in his RFC assessment and provided no basis for failing to do so. (Tr. 15, 17).

Clearly, the ALJ must evaluate every medical opinion in the record. Hamlin v. Barnhart, 365 F.3d 1208, 1215 (10th Cir. 2004).

The ALJ must also explain in the decision the weight given to the medical opinions. Soc. Sec. R. 96-6p, 1996 WL 374180. An ALJ "is not entitled to pick and choose through an uncontradicted medical opinion, taking only the parts that are favorable to a finding of nondisability." Haga v. Astrue, 482 F.3d 1205, 1208 (10th Cir. 2007). Moreover, the failure to recognize the extent of Claimant's reaching restrictions was not harmless, as his past relevant work and the jobs identified by the vocational expert at step five require frequent reaching. *DOT*, §§ 211.462-010, 239.567-010, 311.472-010, 915.667-010.

Defendant's reliance upon Claimant's "well-muscled appearance" falls short of the required functional analysis required to arrive at a valid RFC. Additionally, Defendant argues the restrictions found by the ALJ were supported by the opinion of Dr. Metcalf. This Court agrees with Claimant that the simple marking of a box on a form showing "limited" reaching does not permit the ALJ to find whatever limitation in reaching he chooses and then cite to Dr. Metcalf's opinion as support for that finding. Finally, Claimant's testimony regarding his daily activities does not sufficiently support the lack of restriction in reaching found in the medical evidence. On remand, the ALJ shall re-evaluate Claimant's restrictions in his ability to reach and include the appropriate level of limitation in his RFC assessment.

**Conclusion**

The decision of the Commissioner is not supported by substantial evidence and the correct legal standards were not applied. Therefore, the Magistrate Judge recommends for the above and foregoing reasons, the ruling of the Commissioner of Social Security Administration should be **REVERSED** and the case be **REMANDED** for further proceedings. The parties are herewith given fourteen (14) days from the date of the service of these Report and Recommendation to file with the Clerk of the court any objections, with supporting brief. Failure to object to the Report and Recommendation within fourteen (14) days will preclude appellate review of this decision by the District Court based on such findings.

DATED this 9th day of February, 2017.

_____
KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE